# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CR-21-CVE |
| | ) | |
| DEMARCO DEON WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: DeMarco Deon Williams's Motion for

Disclosure of Informant's Identity and Brief in Support (Dkt. ## 10, 18); defendant's Motion for

*Jackson v. Denno* Hearing (Dkt. # 11); defendant's Motion for *In Camera Ex Parte Hearing* and

Brief in Support (Dkt. # 12); DeMarco Deon Williams's Motion in Limine and Brief in Support

(Dkt. # 15); DeMarco Deon Williams's Motion for *James* Hearing (Dkt. # 16); and Defendant

DeMarco Deon Williams's Motion to Compel Production of Impeachment Material and Brief in

Support (Dkt. # 17).  Defendant has also filed a motion to suppress based on alleged defects in the

search warrant (Dkt. # 14) and a motion to suppress statements (Dkt. # 13), and these motions will

be heard at the pretrial conference set for April 8, 2008.

Defendant is charged with possession of cocaine base with intent to distribute under 21

U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count One), possession of a firearm in furtherance of a drug

trafficking crime under 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(2) (Count Two), possession of a

firearm after a prior felony conviction under 18 U.S.C. §§ 922(g) and 924(a)(2) (Count Three), and

possession of cocaine base with intent to distribute under 21 U.S.C. § 841(a)(1) and (b)(1)(A)

(Count Four).  Counts One, Two and Three stem from a July 27, 2004 search of defendant's

residence based on a search warrant.  Count 4 is based on contraband seized during a search incident

to arrest on October 5, 2004 following defendant's arrest on an outstanding felony arrest warrant.

Defendant's Motion for Disclosure of Informant's Identity
and Motion for In Camera Hearing (Dkt. ## 10, 18)

Defendant requests the disclosure of the identity of the confidential informant ("CI") relied

upon the Tulsa Police Department ("TPD") Officer Jeff Henderson ("Henderson") to prepare the

search warrant and affidavit in support, and he requests an in camera hearing.  He also requests an

in camera ex parte hearing "to ensure that [the confidential informant] neither participated in the

allegations set forth in the Superseding Indictment nor is privy to exculpatory information."  Dkt.

# 10, at 1.  Defendant argues that the CI must have participated in the alleged illegal transaction

referenced in the affidavit, because he could not have observed an illegal drug sale, as stated in

Henderson's affidavit for a search warrant, without participating in the sale.  The government

responds that defendant's argument is nothing more than speculation and he has not carried his

burden to obtain an in camera ex parte hearing or disclosure of the CI's identity.

Based on defendant's reading of the affidavit, he asserts that the CI must have participated

in an illegal drug transaction.  The affidavit refers to a "reliable confidential informant" or "RCI"

as the source for much of the information in the affidavit.  In relevant part, the affidavit states:

> YOUR AFFIANT FURTHER STATES THAT IN THE PAST 48 HOURS THE
> MENTIONED RCI HAS BEEN TO THE ABOVE DESCRIBED RESIDENCE
> AND OBSERVED A BLACK MALE, HEREAFTER REFERRED TO AS "JOHN
> DOE" WHO WAS SELLING COCAINE OF OUT [sic] THIS RESIDENCE.  THE
> RCI DIRECTED YOUR AFFIANT TO THE RESIDENCE AND POINTED IT
> OUT AS THE LOCATION FROM WHICH THE RCI OBSERVED THE
> COCAINE.  THE RCI TOLD YOUR AFFIANT THAT THE COCAINE WAS
> PACKAGED FOR SALE.  THE RCI TOLD YOUR AFFIANT THAT THE RCI
> HAS OBSERVED JOHN DOE CONDUCT DRUG TRANSACTIONS FROM THIS

2

> RESIDENCE. THE RCI DESCRIBED THE COCAINE TO YOUR AFFIANT AND THAT THE RCI IS POSITIVE THAT THE ITEMS SEEN IN THE RESIDENCE WERE INDEED COCAINE.

United States v. Williams, 04-CR-167-HDC, Dkt. # 84, Ex. A, at 2 (N.D. Okla. Oct. 14, 2005) ("Williams I"). The RCI also informed the affiant, Henderson, that drug sales occurred after 10 p.m.[1] Id.

The Supreme Court has recognized that the government has a privilege to withhold the disclosure of an informant's identity. Roviaro v. United States, 353 U.S. 53, 59 (1957). However, "[w]here the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61. When considering whether to require the government to disclose an informant's identity, a court must balance "the public interest in protecting the flow of information in a manner necessary for effective law enforcement against an individual's right to prepare his defense." United States v. Sinclair, 109 F.3d 1527, 1538 (10th Cir. 1997); see also United States v. Martinez, 979 F.2d 1424, 1428 (10th Cir. 1992) ("The scales are tipped toward disclosure only when the combination of circumstances, including the charge, the possible defenses, the significance of the informant's testimony, and other relevant factors, dictates disclosure over secrecy."). The Tenth Circuit has refused disclosure of an informant's identity when "the informant

---

[1]    Defendant omits the remainder of the affidavit that includes Henderson's own observations of the subject residence. After receiving information from the CI, Henderson and other officers conducted surveillance at the residence and noticed a significant volume of foot and car traffic after 10 p.m. Id. Based on Henderson's experience, this indicated that drug sales were occurring during night-time hours, because drug dealers were aware that most search warrants were executed during the day. He also observed a black male come and go from the residence. Id. These observations corroborated the information provided by the CI and supported the existence of probable cause to issue a search warrant.

3

has limited information, was not present during the commission of the offense, and cannot provide any evidence that is not cumulative or exculpatory." United States v. Gordon, 173 F.3d 761, 767-68 (10th Cir. 1999).  "'[M]ere speculation about the usefulness of an informant's testimony' is not sufficient to warrant disclosure."  United States v. Brantley, 986 F.2d 379, 383 (10th Cir. 1993) (quoting United States v. Scafe, 822 F.2d 928, 933 (10th Cir. 1987)).

Defendant argues that the CI "was probably involved . . . [because] [t]here really isn't any other way he could have witnessed the transactions he allegedly witnessed."  Dkt. # 10, at 4. However, the affidavit does not actually state that the CI participated in a drug sale or engaged in any illegal conduct at the subject residence.  Williams I, Dkt. # 82, Ex. A, at 2.  It simply states that he "observed" a male conduct drug sales and he saw cocaine packaged for sale.  This does not compel a conclusion that the CI participated in alleged illegal activity because he could have seen drugs or drug sales without actually participating.   Here, the search of defendant's residence when the drugs were seized was on July 27, 2004, and there is no allegation that the CI was present during the search.  Defendant cites Gaines v. Hess, 662 F.2d 1364 (10th Cir. 1981), to support his motion. In Gaines, the informant was the only witness to an alleged drug sale between the defendant and an undercover police officer and a critical issue was whether defendant was actually the person who sold the drugs.  Id. at 1368.  However, the facts of this case are distinguishable from Gaines.  In this case, the CI simply informed police that a "John Doe" possessed and sold cocaine at his residence, but nothing in the affidavit suggests that the CI actually participated in illegal activity.  Defendant's assertion that the CI must have participated in an illegal drug transaction is nothing more than speculation.

Under Tenth Circuit precedent, defendant must offer more than unsupported speculation to obtain an in camera hearing on his motion for disclosure of the CI's identity.  See In re: Matter of Search 1638 E. 2nd Street, Tulsa, Oklahoma, 993 F.2d 773, 775 n.3 (10th Cir. 1993) (refusing to adopt a firm rule that an in camera hearing must be held anytime a defendant's requests the identity of an informant).  Defendant has failed to show that disclosing the identity of the informant would lead to relevant or helpful information for his defense, and there is no need for an in camera hearing.  Therefore, defendant's motion for disclosure of the informant's identity is denied without an in camera hearing.

Motion for In Camera Ex Parte Hearing (Dkt. # 12)

Defendant asks the Court to conduct an in camera, ex parte hearing to determine if he is entitled to an open evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978).  He asks the Court to compel the government to produce the CI at an in camera, ex parte hearing so the Court can determine if the CI actually exists and, if he does exist, whether his testimony supports the allegations in Henderson's affidavit supporting the search warrant.  The government responds that the Court does not need to hold an in camera hearing or a Franks hearing, because defendant's conclusory allegations do not satisfy his burden under Franks to offer proof in support of allegations that the affiant committed a deliberate falsehood or acted with reckless disregard for the truth.

In Franks, the Supreme Court held that a criminal defendant may challenge the factual allegations of an affidavit supporting a search warrant and, in some circumstances, a defendant is entitled to an evidentiary hearing on this issue.  To obtain an evidentiary hearing, the defendant's "attack must be more than conclusory and must be supported by more than a desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth,

5

and those allegations must be accompanied by proof." Id. at 172.  The focus of a Franks motion must be on the veracity of the affiant's statements, not statements made by an informant.  United States v. Rodriguez-Suazo, 346 F.3d 637, 648 (6th Cir. 2003) (the defendant's attack on the informant's veracity was insufficient to meet his burden for a Franks hearing); United States v. Green, 178 F.3d 1099, 1108 (10th Cir. 1999) (Franks permits a defendant to "challenge the veracity of statements made by a search warrant affiant, not the veracity of statements made by a confidential informant to the affiant.").

Defendant asks the Court to order the government to produce the confidential informant at an in camera, ex parte hearing before proceeding to an open evidentiary hearing under Franks and cites United States v. Barrera, 843 F.2d 1576 (10th Cir. 1988), as support for this procedure. However, in Barrera, the Tenth Circuit expressly rejected the use of an in camera hearing as a substitute for a Franks hearing and found that the district court should not have held an in camera hearing.  Id. at 1578 n.1 ("an in camera proceeding is not a substitute for a Franks type hearing"). As noted above, the issue at a Franks hearing is not the veracity of the informant but, rather, the Court must determine whether the affiant committed a deliberate falsehood or acted with reckless disregard for the truth.  Green,  178 F.3d at 1108.  Defendant disputes the informant's factual allegations and, based on these factual disputes, reaches the conclusion that Henderson fabricated the informant's evidence and the informant may not actually exist.  This is nothing more than unfounded speculation and, as discussed above, this is not a sufficient reason to require the government to produce the informant for an in camera hearing.

The Court finds that defendant has not made a sufficient preliminary showing to obtain a Franks hearing.  Defendant's motion simply offers conclusory allegations that the information

6

provided by the CI was incorrect and, therefore, Henderson's reliance on the CI's information shows that he acted with reckless disregard for the truth.  He suggests that Henderson fabricated the existence of the CI, because defendant claims that he sold drugs but never out of his home.[2]  See Dkt. # 12, at 4. Defendant also alleges that Henderson frequently uses the same form for search warrant  affidavits and this implies that the affidavits "were drafted generically as pretexts" to prevent motions to suppress.   Id. at 5.  Defendant also claims that Henderson has twice been investigated by the internal affairs department of TPD, and this suggests that he plays "fast and loose with the truth."  Id.

However, none of these allegations entitles defendant to a Franks hearing, because defendant has failed to offer proof that any specific statement in the search affidavit was made with reckless disregard for the truth.  See Franks, 438 U.S. at 171.  Defendant's affidavit challenging the CI's statements that defendant sold drugs from his home is irrelevant because it is the affiant's veracity, not the informant's, that is at issue.  United States v. Ross, 920 F.2d 1530, 1534 (10th Cir. 1990). Henderson did not rely solely on the CI's information but, as noted above, he conducted his own surveillance to corroborate the tip.  Henderson noticed a heavy volume of foot and automobile traffic after 10 p.m. and he also noticed a black male come and go from the residence.  Based on his own observations, Henderson determined that probable cause existed to obtain a search warrant for the subject residence.  Further, Henderson's use of similar language in other warrants for search

---

[2]      In an affidavit attached to a similar motion in Williams I, defendant states that he "never, ever, ever sold cocaine, cocaine base or any other illegal substance from the residence in question, 3811 South 128th East Avenue, in Tulsa, Oklahoma. Ever."  Williams I, Dkt. # 82, Ex. B, at 5.  Based on this declaration, defendant states that "there cannot **BE** an informant who told Officer Henderson the things Officer said the informant told him in that affidavit."  Id.

affidavits may suggest that Henderson uses a form when drafting such affidavits but, without more, it does not show he committed an intentional falsehood or acted with reckless disregard for the truth. The Court has reviewed the exhibits cited by defendant to support his allegations that Henderson has been investigated for misconduct.  See Williams I, Dkt. # 82-2, Exs. F, G.  Exhibit F is an inter-office memorandum showing that Henderson was disciplined for conducting an on-duty check at a bar following a personal dispute.  Exhibit G shows that Henderson was investigated in October 2000 for allegedly including false information in a search warrant affidavit, but defendant has omitted the page of the document (page 19 of 22) showing the results of this aspect of the investigation.[3]  However, the investigation report did not recommend that any discipline be imposed against Henderson, and this suggests he was cleared of the alleged misconduct.  Id., Ex. G, at 36. None of this evidence suggests that Henderson has a history of using false information to obtain search warrants. Consequently, defendant has not presented any non-conclusory allegation supported by proof that would require a Franks hearing concerning the factual statements in Henderson's affidavit for search warrant.

The Court finds that defendant has not made a preliminary showing that the affidavit for search warrant prepared by Henderson contains intentionally false or recklessly made statements, and defendant's motion for a Franks hearing is denied without a hearing.  See United States v. Kennedy, 131 F.3d 1371 (10th Cir. 1997).

---

[3]      Henderson was also investigated for using excessive force and failing to complete a use of force report, but he was cleared of those charges. Id., Ex. G, at 32-33.

Defendant's Motion in Limine (Dkt. # 15)

Defendant has filed a motion in limine asking the Court to exclude evidence related to defendant's alleged involvement in the murder of Necko Padillow, illegal activity at 110 East 63rd Street, Tulsa, Oklahoma, and any evidence of defendant's prior convictions. The government has responded that it does not intend to introduce evidence linking defendant to the murder of Necko Padillow or alleged illegal activity at 110 East 63rd Street, and to that extent the motion is moot. However, defendant is charged with being a felon in possession of a firearm under 18 U.S.C. § 922(g), and the government asserts that defendant's prior convictions are an element of the substantive offense. The government also notes that it may use defendant's prior convictions for impeachment purposes should he choose to testify at trial.

The Supreme Court addressed the admissibility of evidence of prior convictions in a § 922(g) prosecution in <u>Old Chief v. United States</u>, 519 U.S. 172 (1997). Under § 922(g), the government has the burden to prove the fact of defendant's prior felony conviction and there are two ways for the government to meet its burden. <u>Id</u>. at 191-92. The government may introduce an official record of the defendant's prior felony conviction. However, if defendant would prefer to stipulate to the fact of a prior conviction, the Court must accept this stipulation and the prosecution will be barred from presenting additional evidence to prove this element of a § 922(g) charge. <u>Id</u>. The defendant may not preclude reference to the fact of a prior felony conviction, but he may stipulate to this fact and keep the details of the prior conviction from the jury.

Defendant does not cite <u>Old Chief</u> in his motion in limine but, instead, relies on various constitutional provisions and evidentiary rules in an attempt to exclude evidence of his prior

9

convictions.[4]  Contrary to defendant's assertion, his prior convictions are not "irrelevant" and the fact that defendant has previously been convicted of a felony is an essential element of the government's case under § 922(g).  Under Fed. R. Evid. 401 and 403, the fact of defendant's prior conviction is relevant to a "fact that is of consequence" and it is not unfairly prejudicial. Defendant's failure to address <u>Old Chief</u> is fatal to his motion in limine.  Under <u>Old Chief</u>, defendant is faced with a choice to stipulate to the existence of his prior convictions or the Court must allow the government to admit evidence proving that defendant has previously been convicted of a felony. Therefore, defendant's motion in limine is denied to the extent that he seeks to exclude evidence of his prior convictions and it is moot in all other respects.

<u>Defendant's Motion to Compel Production of Impeachment Evidence (Dkt. # 17)</u>

Defendant seeks an order compelling the government to produce the personnel file of Henderson, because defendant believes that Henderson has twice been investigated by TPD for misconduct.  The government has asked TPD to review Henderson's personnel file to "determine if there are any credible allegations that have been made against him regarding his truthfulness, and if there are any *Brady/Giglio* materials or evidence that impeaches the officer or tends to exonerate the defendant."  Dkt. # 24, at 2.[5]

---

[4]      Defendant cites the Grand Jury and Double Jeopardy Clauses of the Fifth Amendment and Federal Rules of Evidence 401, 402, 403, and 404.  He provides no precedent discussing the constitutionality of  admitting evidence of prior convictions when this fact is an element of the substantive offense.  In addition, he has not cited any precedent suggesting that evidence of prior convictions is irrelevant or unfairly prejudicial in a § 922(g) prosecution.

[5]      Defendant obtained <u>Brady</u> materials concerning Henderson's disciplinary record during the October 2005 trial and, in fact, he cites those materials in support of motions filed in this case.  The Court assumes that defendant is seeking discovery of updated materials that may have been added to Henderson's personnel file after the first trial.

At this time, defendant's motion for disclosure of Henderson's personnel file under <u>United States v. Brady</u>, 373 U.S. 83 (1963), is premature.  Based on the government's response, it appears that the government has requested any <u>Brady</u> materials in Henderson's personnel file but has not received that evidence from TPD.  A <u>Brady</u> violation does not occur unless "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." <u>United States v. Geames</u>, 427 F.3d 1333 (10th Cir. 2005).  This case has not proceeded to trial and, therefore, a <u>Brady</u> violation could not have occurred.  Should the government discover any <u>Brady</u> materials from TPD, it must provide such material to defendant before trial.  Based on the government's assertion that it does not have Brady material in its possession, defendant's motion to compel production of <u>Brady</u> materials is moot.  However, he may reurge this motion following trial if he believes that the government failed to produce <u>Brady</u> materials.

<u>Motion for Jackson v. Denno Hearing (Dkt. # 11)</u>

Defendant requests a hearing pursuant to <u>Jackson v. Denno</u>, 378 U.S. 368 (1964), for a judicial determination of the voluntariness of a confession.  The government agrees that a pretrial hearing to determine the admissibility of defendant's confession is appropriate and it is prepared to present evidence on this issue at the pretrial conference.  The Court finds that defendant's motion for a <u>Jackson v. Denno</u> hearing should be granted, and this matter will be considered at the pretrial conference.

<u>Motion for James[6] Hearing (Dkt. # 16)</u>

---

[6]     Defendant's motion is based on <u>United States v. James</u>, 590 F.2d 575 (5th Cir. 1979), which has been adopted by the Tenth Circuit for the admission of coconspirator statements in a criminal case.  To admit a coconspirator's statement against a defendant at trial, a district court may either hold a <u>James</u> hearing or it may provisionally admit the statement "with the caveat that . . . the party offering [it] must prove the existence of the predicate conspiracy

Defendant filed a motion for a <u>James</u> hearing to determine the admissibility of co-conspirator statements, because he did not know if the government intended to introduce such statements at trial. The government's responds that it "does not intend to introduce any co-conspirator statements under Fed. R. Evid. 801(d)(2)(E)." Dkt. # 21, at 1. Therefore, the Court finds that defendant's motion for a <u>James</u> hearing is moot.

**IT IS THEREFORE ORDERED** that DeMarco Deon Williams's Motion for Disclosure of Informant's Identity and Brief in Support (Dkt. ## 10, 18) is **denied**; defendant's Motion for *Jackson v. Denno* Hearing (Dkt. # 11) is **granted**; defendant's Motion for *In Camera Ex Parte Hearing* and Brief in Support (Dkt. # 12) is **denied**.; DeMarco Deon Williams's Motion in Limine and Brief in Support (Dkt. # 15) is **denied in part** and **moot in part**: the motion is denied as to the admissibility of defendant's prior convictions and it is moot in all other respects; DeMarco Deon Williams's Motion for *James* Hearing (Dkt. # 16) is **moot**; Defendant Demarco Deon Williams's Motion to Compel Production of Impeachment Material and Brief in Support (Dkt. # 17) is **moot**.

**DATED** this 7th day of April, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

through trial testimony or other evidence." <u>United States v. Gonzalez-Montoya</u>, 161 F.3d 643 (10th Cir. 1998) (quoting <u>United States v. Owens</u>, 70 F.3d 1118, 1123 (10th Cir. 1995)).