UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-CR-21-CVE |
| ) | |
| DEMARCO DEON WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court are defendant's Motion to Suppress Statements and Brief in Support (Dkt. # 13) and DeMarco Deon Williams's Motion to Suppress Arrest and Search (Dkt. # 14). The Court held a suppression/motions hearing on April 8, 2008. In addition to defendant's motions to suppress, the Court previously granted defendant's motion (Dkt. # 11) for a hearing under Jackson v. Denno, 378 U.S. 368 (1964), seeking a judicial determination of the voluntariness of defendant's confession on July 27, 2004, and the parties presented evidence on this issue at the hearing.

**I.**

Tulsa Police Department ("TPD") Officer Jeff Henderson ("Henderson") received a tip from a confidential informant ("CI") that an unknown black male was selling cocaine from 3811 South East Avenue, Tulsa, Oklahoma. The CI had provided reliable information on seven previous occasions. Henderson conducted surveillance at the residence and confirmed that short-term car and foot traffic between the hours of 10 p.m. and 6 a.m. suggested that drug sales were occurring at this address. He also observed a black male come and go from the residence. Based on the CI's tip and his own observations, Henderson prepared an affidavit for search warrant and a proposed warrant on July 27, 2004.

At the suppression hearing, Henderson testified about his usual procedure when drafting an affidavit and obtaining a fully executed search warrant. After Henderson gathers information supporting probable cause for a search, he types an affidavit for search warrant on his computer. He admits that he frequently uses a template and he may cut and paste general information, such as a description of a residence or his credentials, from a previous affidavit. Henderson drafts a narrative of the facts supporting probable cause and prepares a proposed search warrant for the judge to review. Before approaching a judge to execute the warrant, Henderson makes at least 4 copies of the affidavit and warrant. Henderson testified that one copy is for TPD's file, one copy is served on the resident at the time the search warrant is executed, and one copy must be filed of record with the court clerk. Depending on the time of day, Henderson may meet with the judge at his or her chambers or at his or her home. The judge swears Henderson in and Henderson presents the facts supporting probable cause to issue a search warrant. Henderson does not sign the affidavit until he is sworn in by the judge and, as he must execute duplicate originals, there are frequently slight variations in the handwriting on each copy. If the judge determines that probable cause exists, he signs the warrant, including any duplicate copies, and returns the original documents to Henderson.

Henderson testified that he has a general recollection of the process used to obtain a search warrant in this case and he followed the above-outlined procedure in this case. Henderson sought approval of the affidavit and search warrant at night, and he drove to the judge's home to present the affidavit to the judge.[1] The judge found probable cause for the search warrant and signed duplicate original copies of the affidavit and search warrant. It is evident from the documents

---

[1] Henderson believes that Judge David Youll, a judge of the Tulsa County District Court, heard the evidence and signed the search warrant, but he does not clearly remember.

submitted by defendant that the handwriting and signatures on the copy of the affidavit and search warrant filed with the court clerk differ from the unfiled copies, and the parties have stipulated to this fact.[2] Although the handwriting may somewhat differ, Henderson testified that the narrative section of the affidavit is identical in each copy and the documents were executed at the same time. Likewise, the descriptions of the items to be seized and the place to be searched are identical in both copies of the search warrant. Based on Henderson's experience, he testified that he followed the standard procedure for obtaining a search warrant and the slight variations in handwriting are not an indication of a procedural irregularity.

TPD officers, including Henderson, Randy MacKenzie ("MacKenzie"), and Sergeant Thomas Sherman ("Sherman"), executed the search warrant on July 27, 2004. Police knocked on the front door and announced their presence, but no one answered the front door. The officers made a forcible entry and observed DeMarco Deon Williams ("Williams") leaving the kitchen. Police handcuffed Williams and searched the kitchen. They discovered a baggie of crack cocaine in the garbage disposal and also found a fully loaded .38 caliber revolver in a bedroom. Defendant was formally arrested on drug charges. MacKenzie, as instructed by Sherman, read Williams his Miranda rights while Sherman and Henderson were present. All three police officers believed that Williams understood his rights and did not appear to be under the influence of drugs or alcohol.

---

[2]   The relevant exhibits were presented at the suppression hearing and marked as follows: Defendant's Exhibit A - filed copy of search warrant; Defendant's Exhibit B - unfiled copy of search warrant; Defendant's Exhibit C - filed copy of affidavit for search warrant; and Defendant's Exhibit D - unfiled copy of affidavit for search warrant. When these and other exhibits are cited, the Court will refer to the exhibit number of the exhibits as presented at the suppression hearing rather than exhibits attached to motions in an earlier case, United States v. Williams, 04-CR-167-HDC (N.D. Okla.) ("Williams I").

Police took Williams to the Uniform Division North Selective Enforcement Office for questioning. Henderson and Sherman were present during the interview, and Henderson reminded Williams of his Miranda rights. According to Henderson, Williams stated that he understood his rights and voluntarily talked to police. Williams told police that he went to the bedroom to find a gun when he heard knocking on the front door. Williams did not believe that many people knew his address and he thought he was being robbed. When police announced their presence, he threw the gun on the bed and ran to the kitchen in an attempt to destroy evidence by putting crack cocaine down the garbage disposal. During the interview, Henderson and Williams discussed several known drug dealers and Williams offered to assist police by participating in controlled buys. Henderson testified that Williams asked him to prepare a witness statement memorializing his statements. Henderson acknowledged that Williams did not write the statement, but he testified that he transcribed Williams' statement as the interview proceeded.[3] Henderson testified that he was absolutely certain that Williams reviewed the witness statement before signing it. As noted above, Sherman was present during the interview. Sherman testified that Henderson took the statement at Williams' request, and he has a "clear recollection" that Williams signed the form after Henderson completed the written witness statement.

Williams denies the government's assertion that he voluntarily confessed. Dkt. # 11, at 1. He claims that the witness statement was blank when he signed it, and he did not authorize Henderson to write the witness statement. He states that police promised to release him if he signed a blank witness statement and he denies writing or approving any witness statement following the search of his residence on July 27, 2004.

---

[3] At the lower right-hand corner of the witness statement, a box is checked showing that "the statement was dictated to the officer at [the witness'] request." Plaintiff's Ex. 1.

4

Police released Williams after the interview was concluded, because Williams agreed to cooperate with police. Henderson and Sherman recall that Williams was trying to make a deal to avoid being arrested or charged with a crime. However, neither Henderson nor Sherman were authorized to negotiate a plea bargain. Sherman does not remember an attorney from the Tulsa County District Attorney's office or the United States Attorney's Office being present during the interview. However, he testified that this would not be standard practice and he would have remembered if an attorney for a prosecuting authority were present.

On October 5, 2004, TPD officers observed Williams driving a 1993 Lexus near 1300 North Denver Avenue, Tulsa, Oklahoma. Henderson positively identified Williams from his previous encounter with Williams on July 27, 2004. Henderson confirmed that Williams had an outstanding felony arrest warrant, and he called for backup to initiate a traffic stop. Henderson was in an unmarked vehicle and he needed assistance from a marked unit to conduct a traffic stop. The marked unit arrived and initiated the traffic stop. Williams was placed under arrest and, as part of a search incident to arrest, police discovered $3,410 in cash on Williams' person. Police found a bag containing approximately 9 ounces of crack cocaine in the vehicle.

Detective Roger Smith ("Smith") interviewed Williams at police headquarters shortly after the arrest. Smith recalls that he read Williams his <u>Miranda</u> rights before conducting the interview. Williams stated that he understood his rights and executed a written waiver. Williams admitted to possessing the drugs found in the 1993 Lexus and stated that the drugs were fronted by a distributor referred to as "Joker." He claimed that he normally purchased about half a kilogram of cocaine per week from Joker for $10,000. Smith also asked Williams about the gun found in his residence on July 27, 2004, and Williams stated that he kept the gun for protection. Smith testified that he was

5

not authorized to negotiate a plea bargain with Williams and no attorney for a prosecuting authority was present during the interview.

Williams later sent a letter to the United States Attorney's office and the letter was file-stamped as received on October 28, 2004.[4] See Williams I, Dkt. # 80, Ex. H. Williams and his attorney met with the United States on March 10, 2005 and discussed a possible plea deal for charges that may be filed against him. The United States acknowledges that any statements, oral or written, made by defendant on March 10, 2005 are not subject to disclosure under Fed. R. Crim. P. 11(f) and it will not attempt to use this evidence at trial.

## II.

Defendant argues that the existence of multiple copies of the affidavit and search warrant constitutes a serious procedural irregularity that requires the Court to suppress any evidence seized during the July 27, 2004 search of his home. The parties have stipulated that the signatures on the affidavits and search warrants are different. Based on Henderson's testimony, it is clear the he made multiple copies of the affidavit and search warrant and that the judge signed duplicate original copies. Therefore, the Court is presented with a legal issue rather than a factual dispute. The parties agree that multiple copies of the affidavit and search warrant were executed on July 27, 2004, but defendant argues that this is an irregularity that requires the suppression of evidence under the Fourth Amendment.

Defendant does not challenge the affidavit on the ground that police lacked probable cause to conduct the search but, instead, he focuses on alleged procedural irregularities. In support, he cites a dissenting opinion from a 1936 decision by the West Virginia Supreme Court. See State v.

---

[4]   The United States does not intend to use the letter as evidence at trial. See Dkt. # 22, at 2.

Matthews, 184 S.E. 665, 669 (W. Va. 1936) (Kenna, J., dissenting) ("But, although I admit candidly that I have not been able to find cases directly upon the question, I entertain serious doubt as to whether more than one search warrant for the search of the same premises should be issued at the same time, and placed in the hands of the same officer."). However, Matthews is distinguishable from the present case. In Matthews, a police officer had two different warrants authorizing a search of the same building. Id. at 666-67. One warrant described the place to be searched as "that certain place of business located at 144 1/2 Summers Street in the city of Charleston" and the other warrant described the location as "that certain place of business operated by Shorty Wilson on Summers Street in the City of Charleston." Id. at 666. In this case, Henderson presented multiple original copies of the same affidavit and warrant for signature on July 27, 2004 and the contents of the affidavits and search warrants are identical. Unlike Matthews, this does not suggest that any procedural irregularity occurred when the search warrant was issued.

It is common practice for a police officer to bring more than one copy of the affidavit and search warrant to the issuing magistrate and, contrary to defendant's argument, this is not a procedural irregularity. Even if the existence of multiple copies were an irregularity, this would not require the Court to suppress any evidence. See United States v. Lipford, 203 F.3d 259 (4th Cir. 2000) (suppression not required when police presented defendant an unsigned copy of the search warrant because an original, signed copy existed and the warrant was supported by probable cause). Defendant has not shown that the existence of multiple original copies of the affidavit and search warrant with different signatures constitutes a procedural irregularity under the Fourth Amendment, and his motion to suppress evidence seized during the July 27, 2004 search is denied.

**III.**

Defendant claims that he intended to negotiate a plea when he talked to law enforcement officials on July 27, 2004 and October 5, 2004, and any statements made on those dates should be excluded under Fed. R. Crim. P. 11(f). As noted above, the government does not intend to introduce any statements made by Williams at the Rule 11 meeting on March 10, 2005, and his motion is moot on this issue. On July 27, 2004, defendant signed a written statement stating that he "spoke with Officer Henderson and told him I wanted to work a deal and not be arrested." Plaintiff's Ex. 1. When defendant was arrested on October 5, 2004, Henderson noted in a written report that defendant "requested not be charged with any drug related charges." Williams I, Dkt. # 80, Ex. G, at 11. Defendant asserts that both statements show that he subjectively intended to negotiate a plea bargain on July 27, 2004 and October 5, 2004. The government responds that an no prosecuting attorney was present on either date, and defendant's subjective expectation to negotiate a plea bargain was objectively unreasonable.

Statements made by a defendant during plea discussions with an attorney for the prosecuting authority generally are inadmissible under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410(3) and (4). In United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir. 1978), the court adopted a two-part test to determine whether a defendant's statements were made in the course of plea discussions. First, a court must determine "whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion." Id. Second, a court must determine "whether the accused's expectation was reasonable given the totality of the objective circumstances." Id. While "[p]lea negotiations are inadmissible, . . . not every discussion between an accused and agents for the government is a plea negotiation." Id. at 1365. A court should

exclude such discussions "only when the accused and the government actually engage in plea negotiations." Id.

The government has satisfied its burden to prove that any statements made by defendant on July 27, 2004 and October 5, 2004 were not made as part of plea negotiations. See id. at 1366 n.21 (noting that the prosecution "bears the burden of proving that the discussion was not a plea negotiation once the issue has been properly raised."). Defendant has submitted an affidavit stating that "[a]ll statements made by me . . . were made by me with the expectation that I was engaging negotiations with the authorities" and he "thought [he] was making a deal." Williams I, Dkt. # 80-2, Ex. I, at 16. Even if the Court were to assume that defendant had a subjective expectation that he was negotiating a plea, his expectation was unreasonable. On July 27, 2004 and October 5, 2004, no attorney for any prosecuting authority was present during defendant's discussions with police. Henderson and Sherman testified that defendant seemed interested in making a deal on July 27, 2004, but no attorney from the Tulsa County District Attorney's Office or the United States Attorney's Office was present during their interview with Williams. In addition, they testified that they did not have authority to enter plea negotiations. Likewise, Smith testified that no attorney from a prosecuting authority was present during his October 5, 2004 interview with defendant. Defendant has offered no evidence contradicting Henderson's, Sherman's or Smith's testimony, and the Court finds that their testimony concerning the absence of an attorney from a prosecuting authority on July 27, 2004 and October 5, 2004 is credible.

Interpreting former Rule 11(e), the Tenth Circuit held that Rule 11 applies only to plea discussions authorized by an attorney for the government. United States v. Browning, 252 F.3d 1153, 1158 (10th Cir. 2001); see also United States v. Thompson, 2007 WL 613990 (N.D. Okla.

Feb. 22, 2007) (denying motion to exclude statements under Rule 11 because defendant could not have reasonably believed that TPD officers had authority to enter plea negotiations without an attorney present). Without the presence of an attorney authorized to enter plea negotiations, defendant's subjective expectation to negotiate a plea bargain was unreasonable. See United States v. Stein, 2005 WL 1377851, *10 (E.D. Pa. June 8, 2005) (Rule 11(f) was not intended to exclude statements between a criminal defendant and law enforcement personnel). Defendant's argument as to objective reasonableness focuses wholly on statements made at the March 10, 2005 Rule 11(f) meeting and, as the government has conceded, those statements fall within Rule 11(f). However, defendant has not shown that he had a reasonable expectation that he was negotiating a plea bargain on July 27, 2004 or October 5, 2004, and his motion to exclude statements under Rule 11(f) is denied as to any statements made by defendant on July 27, 2004 and October 5, 2004.

**IV.**

Defendant requested a hearing to determine whether his confession on July 27, 2004 was voluntary. The purported confession was a witness statement signed by defendant on July 27, 2004 in which he admits to possessing drugs found in his house. Plaintiff's Ex. 1. The purpose of a Jackson v. Denno hearing is to determine the voluntariness of a confession before trial. In Jackson v. Denno, 378 U.S. 368 (1964), the Supreme Court held that an evidentiary hearing is required when a defendant challenges the voluntariness of a confession. See United States v. Dowell, 430 F.3d 1100, 1106 (10th Cir. 2005) ("When a defendant questions the voluntariness of a confession, a hearing is mandated."). The requirement for an evidentiary hearing has been codified at 18 U.S.C. § 3501. See id. ("Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issues as to voluntariness."); United States v. Miller, 987 F.2d

1462 (10th Cir. 1993). In compliance with Jackson and § 3501, the Court held a hearing to determine the voluntariness of defendant's confession as part of the suppression hearing on April 8, 2008.

The government bears the burden to prove by a preponderance of the evidence that a confession was voluntary. United States v. Pettigrew, 468 F.3d 626, 633 (10th Cir. 2006). "The essence of voluntariness is whether the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne." United States v. Carrizales-Toledo, 454 F.3d 1142, 1153 (10th Cir. 2006) (quoting United States v. Rith, 164 F.3d 1323, 1333 (10th Cir. 1999)). A court must consider the totality of the circumstances when determining whether a confession is voluntary, including the following non-exclusive factors: "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment." United States v. Lopez, 437 F.3d 1059, 1063 (10th Cir. 2006). A court should also consider "both the characteristics of the accused and the details of the interrogation" and no single factor should be treated as conclusive. Id. (quoting United States v. Toles, 297 F.3d 959, 965 (10th Cir. 2002)).

Defendant denies making the confession and claims that the witness statement form was blank when he signed it. Dkt. # 11, at 1. He further claims that police promised to release him from custody if he signed a blank witness form. Id. Defendant has submitted an affidavit stating that the document was blank when he signed it and Henderson wrote the witness statement without any input from defendant. Williams I, Dkt. # 83, Ex. B, at 2. Defendant cites People v. Gay, 24 P.3d 624 (Col. App. 2000), which held that a confession was involuntary when a criminal defendant signed

a blank witness statement and police subsequently completed the witness statement without the defendant's authorization.

MacKenzie testified that he read defendant his Miranda rights before any interrogation occurred, and Henderson added that he reminded defendant of his Miranda rights at the Uniform Division North Selective Enforcement Office before he initiated any questioning of defendant. Henderson testified that defendant asked him to prepare a witness statement at the beginning of the interview and he wrote the statement as the interview proceeded. At the suppression hearing, Henderson reviewed the witness statement and testified that it accurately reflected defendant's statements during the interview. After Henderson finished drafting the witness statement for defendant, Henderson claims that he presented the statement to defendant for his review before defendant signed it. He stated that he was absolutely certain of this fact because he would never allow a person to sign a blank witness statement. Henderson noted that the witness statement form has a box that should be checked when the statement is written by a police officer at the witness' request, and he checked the box indicating that he wrote the witness statement at defendant's request. See Plaintiff's Ex. 1. Sherman was also present during the July 27, 2004 interview and testified that defendant asked Henderson to write the witness statement for defendant. Sherman has a "clear recollection" that Henderson showed the fully-drafted witness statement to defendant before defendant signed the statement. Both Henderson and Sherman testified that TPD would not have released defendant following the interview if he had not agreed to cooperate.

The Court finds that Henderson's and Sherman's testimony is credible. Both witnesses demonstrated a clear recollection of the events of July 27, 2004, and their testimony is corroborated by the evidence presented at the Jackson v. Denno hearing. Henderson unequivocally testified that

he would never ask a witness to sign a blank witness statement. He admits that he wrote the statement for defendant. However, Henderson did not disguise this fact, because he checked a box on the form indicating that he wrote the statement at defendant's request. It is not likely that police would have released defendant if he had been unwilling to cooperate, because he was facing serious criminal charges based on the amount of drugs and the weapon located during the search of his home. The contents of the witness statement also support Henderson's testimony. The witness statement shows that defendant was trying to make a deal to avoid prosecution on drug charges and he was willing to assist police by participating in controlled buys with known drug dealers. This is consistent with defendant's assertions that he subjectively intended to negotiate something during the July 27, 2004 interview with Henderson and Sherman, and suggests that Henderson faithfully recorded defendant's statement in the witness statement. Defendant's claim that Henderson asked him to sign a blank witness form is unsupported by any objective evidence and is refuted by the credible testimony of Henderson and Sherman. Therefore, the Court finds that defendant voluntarily confessed and the July 27, 2004 witness statement should not be suppressed.

**IT IS THEREFORE ORDERED** that defendant's Motion to Suppress Statements and Brief in Support (Dkt. # 13) is **denied**. DeMarco Deon Williams's Motion to Suppress Arrest and Search (Dkt. # 14) is **denied**.

**IT IS FURTHER ORDERED** that defendant's confession on July 27, 2004 is voluntary and admissible pursuant to Jackson v. Denno, 378 U.S. 368 (1964).

**DATED** this 10th day of April, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT